ANGELES MAY CRIMINALIZE THE STATUS OF HOMELESSNESS OR ITS FUNCTIONAL EQUIPMENT, OR MAY CRIMINALIZE THE STATUS OF HOMELESSNESS OR ITS FUNCTIONAL EQUIPMENT BY VIRTUE OF A 24-7, NO EXCEPTIONS PROHIBITION ON THE LIFE-SUSTAINING ACTIVITIES OF SLEEPING, LYING AND SITTING, WHERE IT IS UNDISPUTED THAT EACH NIGHT IN L.A. THERE ARE TENS OF THOUSANDS OF HOMELESS MEN, WOMEN AND CHILDREN WHO HAVE NO ALTERNATIVE BUT TO LIVE ON THE STREETS. TO PUT THIS IN THE WORDS OF THE CITY, AND I AM REFERENCING PAGES 17-19 OF THEIR BRIEF, AND PARTICULARLY 19, THE ISSUE STATED DIFFERENTLY IS CAN A CITY PROSECUTE FOR UNAVOIDABLE LIFE-SUSTAINING CONDUCT? THIS IS WHAT THE CITY SAYS, YOUR HONORS. APPELLANTS, AND WHEN THEY'RE DISCUSSING NECESSITY, APPELLANTS CAN RAISE THE NECESSITY DEFENSE AND WILL NOT FACE PUNISHMENT FOR ENGAGING IN UNAVOIDABLE CONDUCT. THAT'S THEIR RESPONSE TO WHAT THESE SIX PLANTIFTS AND TENS OF THOUSANDS OF HOMELESS CAN DO IN THIS SITUATION. THAT'S THE DEFINITION OF STATUS UNDER THE EIGHTH AMENDMENT. IT SATISFIES THE THREE CRITERIA AS INDICATED IN THE ROBINSON CASE. WHERE IN THIS RECORD IS THERE SORT OF EVIDENCE THAT HOMELESSNESS IS UNAVOIDABLE AND IS A KIND OF INNATE, IMMUTABLE CHARACTERISTIC THAT IS NORMALLY HOW ONE DEFINES STATUS? Let me say first, Judge Reimer, that I don't agree that in order to be a status under the Eighth Amendment, that the conduct itself has to be immutable. For example — That would be because you say that it can be a condition? It can be a condition. For example, in the Robinson case, it was not seriously disputed that there are cures, there are treatments that are available for drug addiction. The precise issue, the precise notion of what a status has to be is whether or not it is a characteristic of an individual's life as distinguished from a particularized behavior. That is, for these six plaintiffs or the tens of thousands of homeless who are without — there's no dispute in this record. It's at 404 of the record. It's at 710 of this record. There is not adequate shelter for those individuals, and there is no dispute, to answer Justice White's question at pages 551 and 552 of the Powell decision, that they are on those streets not by choice, but through — but they are not there volitionally. That is — Some might be by choice, and there's some who are there by choice, some who are there involuntarily. And so you're arguing as to your six plaintiffs. As to the six plaintiffs, it's uncontroverted. They're willing to go to a shelter if a shelter is required. Exactly right, Your Honor, and that there are — in Skid Row, there was a disparity of some 2,000 beds that were required, 20 percent of the homeless population on Skid Row. Throughout the county of Los Angeles, it is undisputed that — and this is at page 404 of the record — that there are 48,000 beds in need for those individuals. There is no dispute with respect to those six plaintiffs that they have made multiple efforts to attempt to get into shelters. Those shelters are not available for them. But I also want to respond more specifically to your question, Your Honor, and that is with respect — I want to answer it in two ways. First, with respect to the homeless themselves, Your Honor, the evidence is that something in the neighborhood of 33 to 50 percent of those individuals have mental illness or mental problems, that 20 — 30 to 50 percent have substance abuse problems. Twenty-three percent of those individuals are veterans, many of whom have psychological issues and problems as a result of their service with the military. The point is, Your Honor, with respect to those individuals, that we have a sizable homeless population that is chronic itself. But that's not dispositive. That is, if Mr. Robinson in the California case, page 666, could ultimately have received some therapy and have been removed from that state, that wasn't the issue. We look at the moment itself, the status of the individual itself, and we say — we ask three questions. First, what's the nature of these — of the condition itself? The nature, with respect to homelessness and the acts that are sought to be criminalized, is that sleeping, lying, and sitting are as basic to human beings as breathing. But you have to add something, don't you? I mean, it's — that's just conduct. That is — And that's what the ordinance goes after. Exactly right. So you have to add to that that there was no choice about it because L.A. didn't provide enough shelter, don't you? Yes, but let me say that I don't think that's a function of the conduct itself. What Justice White said at page 551 is that there's really, in this instance — That's what Justice White said, and that was a dicta, and it's concurring. So we've got to make a decision here, sort of fresh. May I say, Your Honor, that, first, it was the decisive vote, but I don't want the argument to necessarily have to rest on that. The point is, with respect to these acts, sleeping, sitting, and lying, they are inextricably tied to the condition itself. There is no way — that's the definition of homelessness, Your Honor, under the McKinley Act at 11-1302. Under common-sense definitions, there is no way, Your Honor, that an individual who is homeless can do anything other than sleep, sit, or lie in public. Well, unless you find shelter. Unless you find shelter. So you have to add to it in order to make it. I agree with Your Honor. All right. And here, on a summary judgment motion, Your Honor, at minimum, there was a material fact and dispute, but I would state, in fact, that it is uncontroverted, as indicated, but I read from their brief at the beginning. It is uncontroverted, Your Honor, that this is not a close question, that there are not beds available for those individuals either in skid row, a shorty. So you're saying, so that I understand it, that the fact that the city relies on the argument that these people can be arrested and just say, well, but there's no beds, and then they'll be released. Yes. That's the necessity defense. That is a structural necessity defense. This isn't like your garden variety necessity defenses depending on an individualized situation. This is a structural fact, which they don't dispute, that those beds are not available. They say, well, go ahead, go to your criminal prosecution, raise the necessity defense. Well, that's fine, Your Honor, except for these individuals who are the most vulnerable individuals in our society to expect them to raise it. Mr. Puri, Mr. Barger spent days in jail. Can you spell that out for me? Because I have a little trouble with the process here. You've got someone who's arrested. They go, they're prosecuted.  And they plead guilty in order, I guess, to get a deal of time served. That's the way I read the record. The record is also, Your Honor, that this is a street-sweeping statute where they come  Hold on. Humor me a second. Okay. All right. Hold it down. They're arrested, they're charged, prosecuted, they plead guilty, and they get time served. Yes. Now they come up and say, ah, but that whole affair five or six years ago was cruel and  Correct. They didn't say five or six years. Haven't they admitted that it was a prosecutable crime? No, Your Honor. Haven't they waived any constitutional challenge? I want to be clear because I think it is confusing. I want to see if I can straighten this out. First, it wasn't five or six years ago. The individuals like Puri and Barger, those were individuals who in fact were prosecuted, which answers one of their standing arguments, and in fact served punishment. My point is this. When the city comes in and says to Your Honors, well, the answer here is a necessity defense, what the city is saying as a structural matter is that this is an offense that cannot and should not be prosecuted. I think it's actually not only an Eighth Amendment, but it's a due process violation. In terms of the individual plaintiffs themselves, Your Honor, their standing comes from the fact I'm not asking you a standing question, mind you. They haven't waived anything because what they're saying is that we are in jeopardy of being picked up again because this is the policy of the city. Well, yeah, but what's the likelihood of that? I mean, you've got two people who were prosecuted once each out of the bazillion you say are there. They haven't been re-prosecuted. They have been picked up. They have been picked up on multiple occasions. They haven't been re-prosecuted. I mean, but that's still not answering my question, and I really would appreciate your trying to explain to me why it is that having the two people who were prosecuted did plead guilty, and why isn't that the end of any constitutional claim? Because their claim is dependent upon the fact that they will, in fact, be arrested, charged, and perhaps prosecuted once more. And there's nothing to show that even they have been, yes? No. Roberts, Your Honor, the individuals we have here are a situation that is a far cry from Lyons. May I finish my answer? Sure. Oh, of course. I have another question. Let me just finish answering this one, and I'd be pleased to answer yours, Judge Wardlaw. The argument is this, Your Honor. In this case, what we have here, which is distinct from Lyons and distinct from O'Shea, is a policy of a city to arrest individuals in precisely these circumstances. There's a 723-page record in this case with declarations from over 50 individuals. Those individuals, Your Honors, have been picked up on multiple occasions. They have been arrested on multiple occasions, including some of the six plaintiffs themselves. And that's the basis of the claim that under Ingraham that you're saying the arrest itself is cruel and unusual punishment. I am, Your Honor, because Ingraham says. And how do you get around every Supreme Court case that's ever talked about it? You say you have to have a conviction. Well, let me answer that in two ways. First of all, Barger and Puri were in fact prosecuted, and they did serve time. Secondly, Your Honor, the third prong, the third element of an Eighth Amendment claim, when Justice Powell says in Ingraham, look, there are three types of Eighth Amendment violations. The first two are punishments, but the third one deals with certain substantive limits on the labeling of crimes themselves. And for that individual, it's no different than my case in Colander v. Lawson. You can go in under those circumstances. That doesn't. Why doesn't the guilty plea waive that? Because what we're looking at is the future action, the future likelihood that they will in fact be picked up by the police pursuant to this policy. And there's one more distinguishing factor here, Your Honor, that takes us much out of the realm of O'Shea and Lyons, where you remember the Court said in Lyons, well, it would take an incredible assertion for these set of factors to take place again. Here we have a policy of the city. We have a record of multiple arrests. We have a record of individuals of the police focusing on this discrete area. And this Court's decision in the Thomas case at 978 F. Second said a particular element to be looked upon is the small area that is involved here. That was a 42-square block area in Thomas. The area of Skid Row where these individuals reside and where the police operate is far smaller than the area that was found to be sufficient to represent a likelihood of success. And let me say, if there is any question about this, Your Honor, then the appropriate recourse ought to be remanded back to the district court and let us put on this case. It was not these are clearly at minimum material facts that are in dispute. But this is the policy of the city. There's no question that it sends this police in there. They have a specific force that does it. In the month of January 2004, they made hundreds of arrests in this area. The record is replete with the police sending squadrons of individuals in there. And as Your Honor points out, my clients are guilty of that offense. There's no question that they are guilty of that offense because they are sleeping, lying, and sitting, which are the elements that constitute a crime. We don't do that anymore in this country, Your Honor. We don't punish people and we don't prosecute people and we don't arrest people because they're poor and homeless. But let me clarify something. The fact that you're not seeking damages for the Eighth Amendment injury. I just want this to stop, Your Honor. So you're seeking prospective relief only. I'm seeking to enjoin this under the Eighth Amendment, enjoin the enforcement in the same way that Judge Reed in the Cordova case said, look, we've got a vagrancy statute here that is punishing the homeless and let's hope the city looks at this patently unconstitutional statute and stops using it. I'm not seeking damages, Your Honor. These people have lost their goods. They've lost their many days of their lives with respect to this, but I'm not seeking any damages in this case and I don't intend to. Okay. Because that, for me, kind of solves the problem of the prior guilty pleas and guilty pleas. You could never bring a case under the Eighth Amendment under the third part of Ingraham, which the court, I concede to the court at 667, said it is to be sparingly used. Nevertheless, Your Honor, that gets cut out altogether if there's a catch-22 that once you get prosecuted, then you can never challenge the statute itself. Now, as a practical matter, I can't help but read the L.A. Times, so I just want to ask, did you have any evidence in the record of the recent dumping of? No, Your Honor, I'd be pleased to do it, but that's reinforcing that this Skid Row area is the area where the police are focused and everyone knows that the only people who are being picked up here are homeless individuals and they are being picked up because they are homeless. And if this case goes back, you can bet we'll put in a ton of evidence on that. All right. Thank you very much. All right. Thank you, Mr. Rosenblum. Ms. Geale. Good morning, Your Honors. Amy Field on behalf of Defendants and Appellees, the City of Los Angeles, and William Bratton. I think I'd like to start by correcting the record on a couple of things that counsel just argued. Number one, he argued extensively in his reply brief and also just now before the court about the policy of the city, and he claims it's the policy of the city to go in and sweep up the homeless and cite them for 4118 when it's a known fact that there's a shortage of available beds for the homeless. And I'd like to say that there's just simply no evidence in the record to support that proposition. In fact, what the policy of the LAPD is, is they do have an extensive enforcement policy. The day before any citation takes place, what they do is they go out to Skid Row with social service providers, they leaflet the area, they hand out vouchers, they give out information to the homeless on available shelters. Prior to doing that, they've checked with the shelters to ensure that there, in fact, is space available on those days in the shelter. For everybody? Pardon? For everybody that's out there? I mean, the argument seems to me to be that there's they could do that, and I can take your word for that. But are there enough beds for those people who would choose to take advantage of the shelters? They are not citing people, Your Honor, if there is an unavailability of beds. The next day when they go out, they again contact the shelters and get a bed count, find out how many beds are available, and then they go out and cite people who the term I've heard used is shelter-resistant, people who there are beds available, but they choose not to take advantage of them. And I think that's exactly the kind of plaintiff we're talking about here. But it's not these six plaintiffs. They say they want a shelter, they just can't find a bed. I don't think that's correct, Your Honor. I, in looking at their declarations, I thought it was very telling that not one of these plaintiffs said that on the night they were cited, they sought space in a shelter and were turned away. To the contrary, each of these plaintiffs for different reasons chose not to stay in the shelters. You know, one was a husband and wife couple where they would have to be segregated by gender in the shelters. They chose not to do it. One missed the bus to a particular shelter but made no effort to say that they had gone to another shelter and were turned away. Each of these plaintiffs had a reason. I think the closest one who came, who said he sought out shelter was Mr. Cash, who said in the past he had sought out space at the shelter and was turned away. But on the night they were cited, they have no evidence that there were, there was a lack of availability of space or that they even tried. Are you agreeing, then, that involuntariness is an aspect of finding an ordinance and constitutional under the Eighth Amendment? Are you making a distinction now about if they had, you know, if it was voluntary not to take the bed, then there would be no violation? No, I'm not, Your Honor. I think that... What's your legal argument? My legal argument is that the Eighth Amendment protection against cruel and unusual punishment has never, no court has ever deemed homelessness as a status deserving of Eighth Amendment protection. And, in fact, the California Supreme Court has specifically said it is not. So I think that's the first hurdle that plaintiffs would have to clear, and I think it's a hurdle they can't. Aren't they saying, though, that it's homelessness combined with the involuntary nature of the homelessness? As in, I can't remember if it was Paula Robinson, public drunkenness, it was White's concurrence in the result. Public drunkenness is a status that you can arrest without violating the Eighth Amendment. If it was public drunkenness, then it would have been in violation of the Eighth Amendment. Again, Your Honor, I think that was dicta from Justice White. He was the key vote. He was the key vote in that opinion. I mean, otherwise, you wouldn't have had the majority opinion that you had if he had not concurred in the result. That was decided 45 years ago, and no other... Was it supposed to discount the Supreme Court precedent? No, absolutely not. Because it was decided a long time ago? No, absolutely not. I think that makes sense. I think the difference is, and I think that this was said in Tobey, is that when you're talking about homelessness and sleeping on the street, it doesn't fall within the definition of a status for Eighth Amendment purposes, because it's something that changes from day to day, and it's something that can be changed through acts of social intervention, I believe, was the catchphrase. And I think that's true. Where it's not true with age, race, gender, illness. I mean, you know, if you're a narcotics addict, you're a narcotics addict for life. You may not be a user, but you're an addict. And I think that's an established medical fact. But homeless doesn't seem to fit within that same category. And even if homelessness was considered a status for purposes of the Eighth Amendment, no court has extended Eighth Amendment protection to conduct derivative of that status. Tell me, with respect to the third Robinson prong, that's really the one at issue here, where does the need for a conviction factor in? Well, I did some more research on that, Your Honor. And, you know, I did note that plaintiffs cited absolutely no authority to support his proposition that you don't need a conviction. And I couldn't find anything one way or the other in preparing for this argument. Well, here's the question. But to me, it doesn't seem to make sense for, I think, some of the very reasons that you've already articulated. I mean, someone's ---- Well, but if it's the question is whether it is, whether the ordinance has made something, has criminalized something which cannot constitutionally be criminalized, what difference does it make whether there's a conviction? Because the ---- it's not ---- I mean, the punishment occurs in the criminalizing, right, rather than in the sort of it's not a rack and screw, which is where a conviction ---- I think the punishment is triggered by the conviction and the sentencing. And I think that if you have a valid defense ---- Well, but that's not precisely what the Robinson third prong says. It says may criminalize or punish, may criminal or punish. But if you can prove that ---- if you can prove up your necessity defense, then you're not being punished or you're not having a different question. So, I mean, if you don't need to have a conviction for the Robinson third prong, you could still argue that there was a time and place to raise the necessity defense, which isn't now, I guess. Is that your argument? I'm sorry. I wouldn't need that question. All right. I'm not sure whether your argument is that you've got to have a conviction and these folks don't, therefore, end of story, or whether your position is, putting aside whether you need a conviction, here, California law automatically  can't be prosecuted. The statute doesn't criminalize sheer status. I think it's the latter. All right. But, you know, aside from the issue of the conviction, I think fundamental to Plaintiff's claim was it was their burden to come forward with some evidence that, in fact, they were being punished for this unavoidable conduct. And that's, again, assuming status and assuming conduct derivative of status. And they haven't done that. They haven't shown that on the night they were cited there was an unavailability of beds at the shelters. And I think without that, their claims fail. Unless the Court has any questions. Can you pair up the concurrence by Justice White in the Powell case with the dissenters? And reach a conclusion that this is the sort of status that you can't punish? No, Your Honor. I don't think that homelessness is the sort of status. Well, you can, obviously, enact a law that, on its face, punished homelessness. You know, it would be like the vagrancy laws. But I don't have that. Can you link up Justice Powell's concurrence with the dissenters and say that the Court reached that conclusion? I'm not sure, Your Honor. All right. Counsel, I have two declarations here, Barger and Puri. And they both say, I guess you're requiring a higher standard of you want us to require a higher standard of proof. But both of them essentially say that they want to be off the street and they want to get into a shelter, but they can't. Now, they didn't say on that specific night they couldn't, but that is irrelevant if a conviction is unnecessary. I think I am asking for a higher standard. I think that they do, on the night in question, they have to show that. But that's only if they're arrested. And that's a misreading of the third Robinson prong. Does Judge Kosinski's position that dicta should be recognized by the Court fit in here any place? I don't know, Your Honor. I'd also like to make the point that I think that, you know, if this injunction was enacted, I mean, I just can't imagine the enforcement nightmare this would create. I mean, in essence, you'd be asking the city to open up a basically a homeless shelter on the streets just to set aside a, you know, designated area where we're. Just not to arrest them. Just not to arrest people for sitting in line or sleeping on the street. That's all. Well, the flip side to this, Your Honor, is when people are sleeping on the street, particularly when there are beds available at the shelters, and those are the only nights these people are being cited. They're not being cited when the shelters are full to capacity. Is that in the record? No, it's not, Your Honor. And I only bring this up because of counsel's repeated reference to a city policy that there also is no evidence in the record of, and I felt like it needed to be corrected. All right. It's just not happening. You know, the LAPD is enforcing this ordinance because it's a huge problem. I mean, you know, also referring to the articles in the L.A. Times. I mean, what goes on there at nightfall, you know, the drug dealing, the prostitution, the sanitation issues. I mean, the people running their businesses down there, you know, are having a hard time running their businesses because of all of those issues. And so if there's room at the shelter, you need to go to the shelter. If there's not, then hopefully you're not being cited. But if you are, you have a necessity defense that you can raise and you won't be punished for that conduct, which you couldn't avoid. Thank you. I do have one question now for him. Okay. Ms. Rosenbaum, your time has expired, but one of my colleagues has a question. On the policy issue, is there any evidence in the record of a city policy either way? There is, Your Honor. It's undisputed in this record that the police do make mass arrests in this area. There are 723 pages of individuals saying the police came down there. They came down with four cars. There were a number of officers there. They made a number of arrests. I don't hear any dispute about that today. What there is not any evidence in the record is what counsel began her argument with. There isn't a line in the record that suggests that the policy of going down there the day before and talking to individuals and giving them opportunities and not arresting people if they're a shelter. There is nothing in the record with respect to that. If there were, then we'd have a material fact and dispute. But, in fact, there isn't anything in the record. Again, Your Honor, at page 710 of this record, Ms. Callahan, who is here in the courtroom and who is head of the Skid Row's Housing Trust, stated, and it is undisputed at page 710, paragraph 14, that there are not enough beds in Skid Row and that there are some 2,000 bed shortages. At page 404, it states, the gap between the homeless needing a shelter bed and the inventory of shelter beds is severely large. The deficiency in the inventory causes shelters to turn away homeless persons. That's undisputed in this record. Now, I want to go to the individuals that you're ---- Kagan. If you've answered Judge Warlaw's question to her satisfaction, which I think you have, you are way over time, and we understand the argument and appreciate it. May I make one comment about Mr. Cash? Because that ---- On what part of thank you do you not understand? No part, Your Honor. Thank you very much. All right. Thank you for your argument, both of you. And the matter just argued will be submitted.
judges: Rymer, Wardlaw, Reed